**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————————
                                              )
AMIR HEKMATI,                                 )
                                              )
    Plaintiff,                        )
                                              )
       v.                    )    No. 1:23-cv-03774-RCL
                                              )
UNITED STATES DEPARTMENT                      )
OF JUSTICE, et al.,                           )
                                              )
                                              )
    Defendants.                       )
———————————————————————)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

BACKGROUND .................................................................................................................3

I.      Legal Background ....................................................................................................3

        A.     The Justice for United States Victims of State Sponsors
              of Terrorism Fund ..........................................................................................3

II.     Factual And Procedural Background.........................................................................7

        A.     Plaintiff's detention in Iran and claim to the Fund ................................................7

        B.     The Special Master's reconsideration decision and
              hearing before the Special Master ...............................................................9

        C.     Prior litigation in the Federal Circuit.................................................................12

        D.     This litigation.........................................................................................13

LEGAL STANDARDS........................................................................................................13

ARGUMENT.................................................................................................................14

I.      Plaintiff fails to state a claim as a matter of law. ...........................................................14

        A.     The Special Master's hearing procedures satisfy
              due process requirements. ..................................................................15

             1.     D.C. Circuit precedent does not require the right
                   to confront and cross-examine sources in administrative
                   proceedings. ..................................................................16

             2.     The *Mathews* factors confirm that the Special Master's
                   procedures provided sufficient due process in this context. .....................21

        B.     The procedural requirements for formal APA adjudications
               do not apply to hearings before the Special Master.............................................25

CONCLUSION................................................................................................................26

# TABLE OF AUTHORITIES

## CASES

*Abhe & Svoboda, Inc. v. Chao*,
  508 F.3d 1052 (D.C. Cir. 2007) ........................................................................... 14

*Albright v. Oliver*,
  510 U.S. 266 (1994) ............................................................................................. 13

*Am. Pub. Gas Ass'n v. Fed. Power Comm'n*,
  498 F.2d 718 (D.C. Cir. 1974) ...................................................................... 19, 26

*Armstrong v. Manzo*,
  380 U.S. 545 (1965) ............................................................................................. 15

*Arnett v. Kennedy*,
  416 U.S. 134 (1974) ............................................................................................. 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 13

*Boddie v. Connecticut*,
  401 U.S. 371 (1971) ............................................................................................. 15

*Brown v. Gamage*,
  377 F.2d 154 (D.C. Cir. 1967) ...................................................................... 19, 20

*\*Chem. Waste Mgmt., Inc. v. E.P.A.*,
  873 F.2d 1477 (D.C. Cir. 1989) .......................................................................... 26

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985) ................................................................................. 15, 22, 23

*Doe v. Lieberman*,
  No. 20-CV-2148, 2021 WL 4476748 (D.D.C. Sept. 30, 2021) ..................... 18, 19

*Dutton v. Evans*,
  400 U.S. 74 (1970) ............................................................................................... 18

*Fares v. Smith*,
  901 F.3d 315 (D.C. Cir. 2018) .................................................................. 20, 21, 24

*Gilbert v. Homar*,
  520 U.S. 924 (1997) ...................................................................................... 15, 22

*Gonzalez v. Freeman*,
  334 F.2d 570 (D.C. Cir. 1964) ........................................................................15

*Grant v. Mnuchin*,
  Civ. A. No. 15-1008 (RMC), 2019 WL 6034992 (D.D.C. Nov. 14, 2019) ...........................20

*Gray Panthers v. Schweiker*,
  652 F.2d 146 (D.C. Cir. 1980) .......................................................................16

*Halleck v. Berliner*,
  427 F. Supp. 1225 (D.D.C. 1977) ....................................................................18

*Hamdi v. Rumsfeld*,
  542 U.S. 507 (2004) .................................................................................22

*Hekmati v. United States*,
  51 F.4th 1066 (Fed. Cir. 2022) ..................................................................12, 13

*Hekmati v. United States*,
  153 Fed. Cl. 800 (Fed. Cl. 2021) ...................................................................12

*Holy Land Found. For Relief & Dev. v. Ashcroft*,
  333 F.3d 156 (D.C. Cir. 2003) .................................................................*passim*

*Hoska v. U.S. Dep't of the Army*,
  677 F.2d 131 (D.C. Cir. 1982) .......................................................................19

*Info. Ctr. v. Internal Revenue Serv.*,
  575 F. Supp. 3d 84 (D.D.C. 2021) ....................................................................8

*Isaacs v. Bowen*,
  865 F.2d 468 (2d Cir. 1989) .....................................................................22, 23

*Johnson v. United States*,
  628 F.2d 187 (D.C. Cir. 1980) ...................................................................15, 20

*Kiareldeen v. Ashcroft*,
  273 F.3d 542 (3d Cir. 2001) .........................................................................21

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) .............................................................................15, 22

*Montana Power Co. v. Fed. Power Comm'n*,
  185 F.2d 491 (D.C. Cir. 1950) .......................................................................19

*Nat'l Classification Comm. v. United States*,
  765 F.2d 1146 (D.C. Cir. 1985) ......................................................................25

iii

*Nat'l Council of Resistance of Iran v. Dep't of State*,
   251 F.3d 192 (D.C. Cir. 2001) .................................................................. 19, 20, 24

*O'Neill v. Garland*,
   No. 21-1288 (JEB), 2022 WL 17415057 (D.D.C. Dec. 5, 2022) ........................... 14

*Papasan v. Allain*,
   478 U.S. 265 (1986) ................................................................................ 13

*Pearson v. District of Columbia*,
   644 F. Supp. 2d 23 (D.D.C. 2009) ........................................................... 18, 19

*People's Mojahedin Org. of Iran v. Dep't of State*,
   327 F.3d 1238 (D.C. Cir. 2003) .................................................................. 20

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*,
   758 F.3d 296 (D.C. Cir. 2014) ............................................................ 14, 20, 24

*R.R. Comm'n of Texas v. United States*,
   765 F.2d 221 (D.C. Cir. 1985) ................................................................... 25

*Robinson v. D.C. Hous. Auth.*,
   660 F. Supp. 2d 6 (D.D.C. 2009) ................................................................ 19

*Schweiker v. McClure*,
   456 U.S. 188 (1982) ................................................................................ 23

*United States v. Fla. E. Coast Ry. Co.*,
   410 U.S. 224 (1973) ................................................................................ 25

*Zevallos v. Obama*,
   793 F.3d 106 (D.C. Cir. 2015) ................................................................... 23

**STATUTES**

5 U.S.C. § 556 ..............................................................................................25, 26

18 U.S.C. § 1001 ...............................................................................................6

28 U.S.C. § 1746 ........................................................................................5, 6, 17

28 U.S.C. § 1605A ..............................................................................................4

34 U.S.C. § 20144 ......................................................................................*passim*

Consolidated Appropriations Act, 2021,
   Pub. L. No. 116-260, § 1705, 134 Stat. 1182, 3292 (2020) .....................................4

Fairness for 9/11 Families Act,
   Pub. L. No. 117-328, Div. MM (2022) ...................................................................4

United States Victims of State Sponsored Terrorism Fund Clarification Act,
   Pub. L. No. 116-69, § 1701, 133 Stat. 1134, 1140–43 (2019)..................................4

**RULES**

Federal Rule of Civil Procedure 12(b)(6)....................................................................13

Federal Rule of Civil Procedure 25(d) .......................................................................15

**REGULATIONS**

Justice for United States Victims of State Sponsored Terrorism Act,
   81 Fed. Reg. 45,535 (July 14, 2016) .......................................................................5

**OTHER AUTHORITIES**

Special Master's August 2017 Supplemental Report,
   http://www.usvsst.com/docs/USVSST%20Fund%20Supplemental%20
   Congressional%20Report%208-2-2017.pdf...............................................................7

U.S. Victims of State Sponsored Terrorism Fund, U.S. Department of Justice,
   http://www.usvsst.com/index.php (last updated Jan. 23, 2024) ................................7

## INTRODUCTION

In 2015, Congress created the United States Victims of State Sponsored Terrorism Fund (the "Fund"). *See* The Justice for United States Victims of State Sponsored Terrorism Act, 34 U.S.C. § 20144 (the "Act"). Congress directed the Attorney General to appoint a Special Master, who would administer the Fund and, using an initial appropriation of $1.025 billion, would authorize an initial round of payments to eligible claimants within one year of enactment of the Act. Thereafter, Congress directed the Special Master to authorize additional payments generally on an annual basis as available funds from forfeiture proceeds, penalties, and fines allow. Congress also directed the Special Master to publish the procedures necessary for claimants to apply and establish eligibility for payment from the Fund. To be eligible for payment from the Fund, a claimant must hold a final judgment issued by a United States district court under state or federal law against a state sponsor of terrorism and arising from an act of international terrorism, for which the foreign state was found not immune under provisions of the Foreign Sovereign Immunities Act (FSIA), 34 U.S.C. § 20144(c)(2)(A), or be a victim of the Iran hostage crisis, *id.* § 20144(c)(2)(B), (C), and the claimant must certify, under oath, subject to penalty of perjury, that the information provided in their application is true and accurate to the best of their knowledge. Claimants must agree that any payment made by the Fund is expressly conditioned upon the truthfulness and accuracy of the information and documentation submitted in support of their claim. Congress provided that the Special Master's decisions with regard to compensation from the Fund would be final and not subject to additional administrative or judicial review, except that, where the Special Master denied a claimant's application in whole or in part, the claimant may request a hearing before the Special Master, pursuant to procedures established by the Special Master, and the Special Master would, within 90 days thereafter, issue a final, nonreviewable decision.

Amir Hekmati ("Plaintiff") holds a final judgment against Iran based on his detention and torture by the Iranian government between 2011 and 2016. Plaintiff applied to the Fund, and the Special Master initially determined that he was eligible to receive compensation. Before Plaintiff received any payment from the Fund, the Department of Justice asked the Special Master to reconsider his initial determination based on information not previously before him. Upon reconsideration, the Special Master determined that Plaintiff was not eligible for compensation from the Fund because his application contained material omissions and false statements regarding the reasons for Plaintiff's travel to Iran. The Special Master provided Plaintiff the entirety of the record upon which the Special Master relied. Following the Special Master's decision on reconsideration, Plaintiff was afforded a hearing before the Special Master, at which Plaintiff provided oral testimony. Following the hearing, Plaintiff and his counsel were afforded multiple opportunities to submit additional information to rebut the Special Master's determination. In a final written decision, the Special Master upheld his conclusion that Plaintiff's material omissions and false statements regarding his reasons for traveling to Iran made him ineligible for compensation from the Fund.

Plaintiff initially challenged the Special Master's reconsideration authority in the Court of Federal Claims, seeking a judgment that would award him the payment from the Fund to which he believed he was entitled. Both the Court of Federal Claims and the Federal Circuit, however, rejected Plaintiff's challenge to the Special Master's reconsideration authority, held that the Act deprived them of jurisdiction to review decisions of the Special Master regarding compensation from the Fund, and, as courts of limited jurisdiction, held that they lacked jurisdiction over declaratory or injunctive claims not arising under the Tucker Act.

Undeterred, Plaintiff now brings this lawsuit seeking declaratory and injunctive relief, alleging that the hearing procedures employed by the Special Master deprived him of due process under the Fifth Amendment of the Constitution and failed to comply with the APA's formal hearing procedures. Plaintiff does not, and cannot, challenge the merits of the Special Master's decision regarding his eligibility to receive compensation from the Fund, so instead he challenges the procedures employed by the Special Master during the hearing process. Plaintiff focuses on four confidential sources who provided information to the government that supported the conclusion that Plaintiff had lied about his purposes for traveling to Iran. He alleges that he was denied due process because the hearing procedures did not permit him to "confront" and "cross-examine" these individuals. But due process does not require that every administrative civil proceeding mirror the full panoply of procedures which approximate a judicial trial. To the contrary, due process is a flexible inquiry, that generally requires notice and opportunity to be heard commensurate to the particular circumstances of the case. Here, Plaintiff was afforded notice of the reasons for the Special Master's reconsideration decision and provided with the entirety of the record upon which the Special Master relied, attended and testified at a hearing, and availed himself of multiple opportunities to submit additional information in support of his claim. Plaintiff received all of the process that he was due, and neither the Constitution nor the APA requires any more. Accordingly, the Complaint should be dismissed.

## BACKGROUND

### I.   Legal Background

### A.  The Justice for United States Victims of State Sponsors of Terrorism Fund

The Foreign Sovereign Immunities Act ("FSIA") provides that a foreign state designated as a state sponsor of terrorism shall not be immune from the jurisdiction of the courts in cases

seeking monetary damages for personal injury or death caused by certain acts of terror. 28 U.S.C. § 1605A. Despite that waiver of immunity, however, it is frequently difficult for judgment holders to collect damages from state sponsors of terrorism. In 2015, therefore, Congress enacted the Justice for United States Victims of State Sponsored Terrorism Act, which established the United States Victims of State Sponsored Terrorism Fund. 34 U.S.C. § 20144.[1] The Fund provides compensation to eligible claimants who hold judgments against state sponsors of terrorism, hostages held in the United States embassy in Iran from 1979 to 1981 and their spouses and children, or the personal representatives of such persons who are deceased. 34 U.S.C. § 20144(c), (d).

A Special Master, appointed by the Attorney General, administers compensation from the Fund. *Id*. § 20144(b). In addition, the Act directed the Special Master to "publish in the Federal Register and on a website maintained by the Department of Justice a notice specifying the procedures necessary for United States persons to apply and establish eligibility for payment" and provided that "[s]uch notice is not subject to the requirements of section 553 of Title 5." *Id*. § 20144(b)(2)(A).

On May 17, 2016, the Attorney General appointed Kenneth R. Feinberg, Esq. as the Special Master to administer the Fund with the assistance of Department of Justice staff. *Id*. § 20144(b)(1)(A)-(B). The Special Master published the required notice in the Federal Register of the eligibility requirements and application procedures for compensation under the Fund on July

---

[1] Formerly cited as 42 U.S.C. § 10609 (2015). The Act was amended, in ways not material here, in 2019, 2020, and 2022. *See* United States Victims of State Sponsored Terrorism Fund Clarification Act, Pub. L. No. 116-69, § 1701, 133 Stat. 1134, 1140–43 (2019); Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 1705, 134 Stat. 1182, 3292 (2020); Fairness for 9/11 Families Act, Pub. L. No. 117-328, Div. MM (2022).

14, 2016. *See* Justice for United States Victims of State Sponsored Terrorism Act, 81 Fed. Reg. 45,535 (July 14, 2016) ("Fund Procedures").

The Special Master has the sole statutory authority to determine if claims are eligible. 34 U.S.C. § 20144(c)(1). In order to establish an eligible claim under the Act, the claimant, a United States person, must hold a final judgment issued by a United States district court under state or federal law against a state sponsor of terrorism and arising from an act of international terrorism, for which the foreign state was found not immune under provisions of the FSIA, *id.* § 20144(c)(2)(A), or be a victim of the Iran hostage crisis, *id.* § 20144(c)(2)(B), (C). The Act also provides that "in no event shall an individual who is criminally culpable for an act of international terrorism receive any compensation under this section, either directly or on behalf of a victim." *Id.* § 20144(h). Under the Act, payments from the Fund are determined using compensatory judgment amounts for judgment holders, and statutorily determined amounts for Iran hostages and their families. *Id.* § 20144(d). The payments are made in pro rata distributions subject to statutory limitations, including a cap of $20 million on an individual's eligible claim and consideration of compensation claimants have already received from sources other than the Fund. *Id.*

Pursuant to procedures issued by the Special Master, a claimant seeking to establish eligibility for payment from the Fund must submit, among other documents, a copy of the qualifying final judgment, as well as a list identifying any immediate family member(s) of the claimant also identified in the final judgment. *See* Fund Procedures 81 Fed. Reg. at 45,537-41, Part IV. By submitting an application, a claimant acknowledges and certifies the veracity of the application:

> The applicant certifies, under oath, subject to penalty of perjury or in a manner that meets the requirements of 28 U.S.C. 1746, that the information provided in the application and any documents submitted in support of the claim are true and accurate to the best of the applicant's knowledge, and the applicant agrees that any

> payment made by the Fund is expressly conditioned upon the truthfulness and
> accuracy of the information and documentation submitted in support of the claim.

*Id*. The applicant further acknowledges that false statements or claims could result in potential criminal penalties: "The applicant understands that false statements or claims made in connection with the application may result in fines, imprisonment and/or any other remedy available by law to the Federal Government, including as provided in 18 U.S.C. § 1001." *Id*.

The Special Master, assisted by the Fund's claims administrator and Fund staff, reviews and grants or denies applications for compensation. 34 U.S.C. § 20144(c)(1). All decisions of the Special Master with regard to compensation from the Fund are final and, except as provided for in the Special Master's internal hearing procedures, not subject to administrative or judicial review. *Id*. § 20144(b)(3).

If the Special Master denies an application in whole or in part, the claimant may, not later than 30 days after receipt of a written decision by the Special Master, request a hearing before the Special Master or her designee. *Id.* § 20144(b)(4). The Fund Procedures provide additional detail on a claimant's ability to request a hearing, and the procedures for conducting those hearings. In relevant part, the Fund Procedures provide that all hearings shall be before the Special Master or his designee and shall be closed to the public. The Special Master or his designee shall determine time, location, duration, and procedures for the hearing based on the circumstances of the claim. Fund Procedures at 45,539, Part X. The Special Master must then issue, within 90 days of the hearing, a written decision affirming or amending the original decision. 34 U.S.C. § 20144(c)(4)(B). The written decision is final and nonreviewable. *Id*.

The Act established funding for the Fund, including a one-time appropriation of $1.025 billion for the Fund in fiscal year 2017. *Id*. § 20144(e)(5). In addition, the Act mandates that certain

forfeiture proceeds, penalties, and fines (from civil and criminal matters involving prohibited transactions with state sponsors of terrorism) be deposited into the Fund if "forfeited or paid to the United States after" the date of the Act's enactment. *Id*. § 20144(e)(2). The Act instructed the Special Master to authorize initial payments to eligible claimants by December 18, 2016. *Id*. § 20144(d)(2). In its initial distribution, the Fund paid more than $1.1 billion to 2,332 claimants. Special Master's August 2017 Supplemental Report at 4-5, http://www.usvsst.com/docs/USVSST%20Fund%20Supplemental%20Congressional%20Report%208-2-2017.pdf. Additional payments are to be authorized by January 1, 2019 and generally annually thereafter "if funds are available in the Fund." 34 U.S.C. § 20144(d)(4) ("[T]he Special Master . . . shall authorize additional payments for eligible claims annually thereafter *if funds are available* in the Fund.") (emphasis added). To date, the Fund has paid more than $3.3 billion to nearly 16,000 eligible claimants in four rounds of general distributions. See U.S. Victims of State Sponsored Terrorism Fund, U.S. Department of Justice, http://www.usvsst.com/index.php (last updated Jan. 23, 2024). On July 3, 2023, the Fund announced that the Special Master determined that there were insufficient funds to authorize a fifth distribution by January 1, 2024. *See id*. Accordingly, if sufficient funds are available, the Special Master will authorize the next round of payments by January 1, 2025 or in subsequent years, until the Fund sunsets in 2039. *Id*. The Fund will make its final obligations no later than January 2, 2039. 34 U.S.C. § 20144(e)(6).

## II.   Factual And Procedural Background

### A.  Plaintiff's detention in Iran and claim to the Fund

In 2011, Plaintiff traveled to Iran. Compl. ECF No. 1, ¶ 31. He was arrested and held prisoner until his release in 2016. *Id*. ¶ 43. Following his release from detention, Plaintiff filed a civil lawsuit under the FSIA against Iran in the District Court for the District of Columbia. *Id.* ¶ 50.

7

The defendant, the Islamic Republic of Iran, did not appear to defend the case, and Plaintiff moved for and obtained a default judgment in the amount of $63,496,358, which amount included $31,748,179 in compensatory and economic damages. *Id.* ¶ 54; Order & Default J., *Hekmati v. Islamic Republic of Iran*, No. 16-cv-0875, ECF No. 15 (D.D.C. Sept. 29, 2017). In support of his motion for default judgment, Plaintiff submitted a declaration in which he described his travel to Iran and detention. *See* Compl. ¶¶ 50-52.

The following month, Plaintiff filed an application with the Fund, *id.* ¶ 68, and shortly thereafter the Special Master issued Plaintiff a letter stating his then-assessed eligibility in the amount of the compensatory damages award: $31,748,179, *id.* ¶ 70; *see also* Administrative Record (AR) 165.[2] Roughly a year later, in December 2018, the Special Master issued Plaintiff a payment letter in connection with the Fund's second round of distributions, stating that he would be eligible to receive a payment of $839,100.85. *Id.* ¶ 71; AR167.

In a letter dated October 24, 2019, the Interim Special Master, Deborah L. Connor,[3] informed Plaintiff that the Government intended to seek reconsideration of the prior December 2018 eligibility determination and approval of Plaintiff's claim, and had therefore suspended any further action on the payment to Plaintiff from the Fund. *Id.* ¶ 75; AR188. The letter explained that the matter would be referred for reconsideration to Mr. Kenneth R. Feinberg, who made the

---

[2] Pursuant to Local Civil Rule 7(n) the certified list of contents of the administrative record is attached to this motion. While the record in this action, if reviewed for purposes of summary judgment, would be identical to the record referenced throughout this brief, this motion seeks dismissal under Rule 12(b)(6). Accordingly, cites to the record herein are to documents which are referenced in the complaint. *See Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*, 575 F. Supp. 3d 84, 88 (D.D.C. 2021) (courts may consider documents attached as exhibits or incorporated by reference in the complaint).

[3] After Mr. Feinberg's term ended, the Department of Justice named Deborah L. Connor, Chief of MLARS, Criminal Division, U.S. Department of Justice, the interim Special Master on March 8, 2019. Ms. Connor served as Special Master until 2020, when Mary Patrice Brown was appointed Special Master. Mary Patrice Brown is the current Special Master of the Fund.

original determination on the claim, and that Mr. Feinberg would examine whether the conditions for compensation and payment under the applicable statute and procedures have been satisfied. AR188. The letter notified Plaintiff that the Department was in the process of retaining Mr. Feinberg, on a limited basis, for this purpose, and that once Mr. Feinberg was again in place as Special Master, the Department expected to proceed with reconsideration as expeditiously as possible. Plaintiff was informed that he would receive notice of any further decision once the review process has been completed and that, if his claim was not approved, he would have an opportunity to request a hearing.

**B.   The Special Master's reconsideration decision and hearing before the Special Master.**

On January 15, 2020, the Special Master issued a decision on reconsideration and determined that Plaintiff was not eligible for compensation from the Fund. Compl. ¶ 76; AR189-207. The Special Master noted that he was asked by the Department to reconsider Plaintiff's claim to examine whether the requirements for compensation and payment contained in the Fund's governing statute and procedures have been satisfied. AR189. The Special Master also noted that the Department provided him with information that was not before him at the time of the earlier eligibility and payment determinations. *Id*. The materials provided by the Department to the Special Master were provided, in their entirety, to Plaintiff as attachments to the decision on reconsideration. AR191-207. These materials included, *inter alia*, Federal Bureau of Investigation ("FBI") Form FD-302s containing summaries of interviews with Plaintiff and a summary of the evidence, which referenced the statements of four reliable confidential sources. *Id*.; *see also* Compl. ¶ 77. The materials provided by the Department to the Special Master did not reveal the identities of confidential sources.

The Special Master noted that "any payment made by the [USVSST] Fund is expressly conditioned upon the truthfulness and accuracy of the information and documentation submitted in support of the claim," and that the "Fund's procedures and the Application Form require every claimant to certify, under oath and subject to penalty of perjury, the truth and accuracy of the application." AR189 (quoting the Fund Procedures at 45539); *see also* Compl. ¶ 76. The Special Master explained his reconsideration decision:

> Mr. Hekmati certified that his application, including the accompanying documents such as the judgment he obtained in *Hekmati v. Islamic Republic of Iran*, Case No. 1:16-cv-00875-ESH (D.D.C.), were true and accurate to the best of his knowledge. I am persuaded that the attached materials demonstrate that Mr. Hekmati's application and accompanying documents contained material omissions and false statements; in particular, the attached materials support the conclusion that the primary purpose of Mr. Hekmati's trip to Iran was to sell classified U.S. national security information to the government in Iran. This conflicts with Mr. Hekmati's declaration filed in connection with the judgment he obtained in the U.S. District Court for the District of Columbia that the primary purpose of his trip to Iran was to visit family for personal reasons. Therefore, I have determined that Mr. Hekmati has violated the USVSST Fund's processes and procedures, which are required to establish eligibility for payment, and as a result, is not eligible for payment from the USVSST Fund.

AR189. The Special Master's decision on reconsideration also notified Plaintiff of his ability to request a hearing under 34 U.S.C. § 20144(b)(4). AR190. On February 12, 2020, Plaintiff requested a hearing before the Special Master. AR209; Compl. ¶ 78. On March 23, 2020, Plaintiff submitted a brief along with exhibits in advance of the hearing. AR212-506.

On April 7, 2020, the Special Master conducted a hearing during which Plaintiff provided sworn testimony. AR507-610; Compl. ¶ 80. An attorney for the Department of Justice attended the hearing but did not question Plaintiff or present argument. AR515-16. On April 24, 2020, the Special Master provided hearing continuation procedures to Plaintiff and the Department that allowed for further submissions. AR612. Pursuant to those procedures, the Department provided a written response, with exhibits, to Plaintiff's testimony on June 26, 2020. AR613-754. Plaintiff

submitted a reply to the Department's response on July 27, 2020. AR755-777. On September 15, 2020, the Special Master requested additional information from Plaintiff addressing five additional specific questions. AR780-81. Plaintiff responded by letter dated November 20, 2020. AR784-97.

The Special Master issued a Final Decision on December 7, 2020, in which he determined that Plaintiff is not eligible to receive payment from the Fund and affirmed his decision on reconsideration denying Plaintiff's application for payment. AR798-800; Compl. ¶ 84. The Special Master explained that in reaching his decision, he considered Plaintiff's application and supporting documentation, testimony from Plaintiff and argument from counsel offered at the April 7, 2020 hearing, and the additional written materials provided by Plaintiff and the Department of Justice. AR798-99.

The Special Master found, based upon a preponderance of the evidence, that Plaintiff was not eligible to receive payments from the Fund because his application contained material omissions and false statements. AR799. The Special Master noted that in his application, Plaintiff maintained that he traveled to Iran to visit family for personal reasons. *Id*. However, the Special Master concluded that "the circumstantial evidence, when viewed in its totality, indicates that this statement was false, that the Claimant traveled to Iran for primary purposes other than to visit his family." *Id*. The Special Master explained in detail the bases for his decision. *See* AR799-800.

Although Plaintiff had attempted to refute the Special Master's findings and conclusions, the Special Master determined that Plaintiff was "unable to come forward with sufficient evidence to rebut the totality of the evidence." *Id*. The Special Master determined all of the factual material and testimony before him "when reviewed cumulatively and in a comprehensive fashion based upon a review of the entire Hearing record – results in my conclusion that the Department has met the required preponderance of the evidence standard in asserting that [Plaintiff's] application was

untruthful." *Id*. The Special Master therefore concluded that Plaintiff's "appeal should be denied and that my prior reconsideration decision denying the Claimant's application for payment under the USVSST Fund is affirmed." *Id*.

**C. Prior litigation in the Federal Circuit.**

Plaintiff filed a lawsuit in the Court of Federal Claims, alleging that the reconsideration and subsequent denial of his claim was not permitted by the Act and asking the Court to order payment of the money the Special Master had initially awarded him. *Hekmati v. United States*, 153 Fed. Cl. 800 (Fed. Cl. 2021). The Court of Federal Claims dismissed the complaint, concluding that the Act, by providing its own "detailed remedial scheme" where claimants can request a hearing before the Special Master, prevented Plaintiff from invoking the Tucker Act as a basis for Court of Federal Claims jurisdiction. *Id*. at 802, 810. Alternatively, the Court of Federal Claims reasoned that Plaintiff's claim required the court to review the Special Master's decision regarding Plaintiff's compensation, which the Act precluded. *Id*. at 812. The Court of Federal Claims also concluded that it lacked jurisdiction over Plaintiff's claim for declaratory or injunctive relief, because its jurisdiction is limited by statute. *Id*. at 814. The court explained that Plaintiff's claim for declaratory or injunctive relief, if cognizable at all, was best construed as an APA claim over which a district court might exercise jurisdiction. *Id*.

Plaintiff appealed to the Federal Circuit, which affirmed the decision of the Court of Federal Claims. *Hekmati v. United States*, 51 F.4th 1066 (Fed. Cir. 2022). The Federal Circuit first considered whether the Special Master had the authority to issue a reconsideration decision in the first place, and concluded that it did, relying on longstanding caselaw holding that administrative agencies possess inherent authority to reconsider their own decisions. *Id*. at 1070. Because the Special Master's reconsideration decision was a valid "decision[] made by the Special Master with

regard to compensation from the Fund," the Federal Circuit concluded that judicial review was precluded by the Act and affirmed the dismissal of the case. *Id*. at 1072 (quoting 34 U.S.C. § 20144(b)(3)(B)). Plaintiff did not seek *certiorari* from the Federal Circuit's decision.

### D.  This litigation

On December 19, 2023, Plaintiff filed the Complaint in this case. Plaintiff seeks declaratory and injunctive relief asking this Court to declare that the Special Master's hearing procedures violated the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act, and awarding him attorneys' fees. Compl. ¶¶ 87-101. Specifically, Plaintiff claims that, in failing to reveal the identities of confidential sources and denying Plaintiff the opportunity to confront and cross-examine these sources during the hearing before the Special Master, the hearing procedures were constitutionally defective. *Id*. ¶¶ 87-89. Plaintiff also claims that the hearing procedures violate a provision of the APA requiring cross-examination of witnesses. *Id*. ¶ 91-93. Plaintiff seeks a judgment declaring that Plaintiff is entitled to a hearing process before the Special Master that provides for confronting and cross-examining witnesses against him.

### LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In assessing a Rule 12(b)(6) motion, the Court must consider all well-pled allegations in a complaint as true and view the complaint in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994). However, these principles do not apply to "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In deciding a motion under Rule 12(b)(6), a court may additionally consider "documents attached [to the complaint] or incorporated

therein, and matters of which it may take judicial notice," without converting the motion into one for summary judgment. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (citation omitted).

## ARGUMENT

### I.   Plaintiff fails to state a claim as a matter of law.

Plaintiff brings two claims, both of which challenge the procedures followed in the hearing before the Special Master. Plaintiff does not, and cannot, challenge the Special Master's ultimate conclusion regarding his eligibility to receive compensation from the Fund because the Act expressly precludes judicial review of decisions of the Special Master with regard to compensation from the Fund. *O'Neill v. Garland*, No. 21-1288 (JEB), 2022 WL 17415057, at *4 (D.D.C. Dec. 5, 2022) (quoting 34 U.S.C. § 20144(b)(3)). He limits his challenge to the procedures employed by the Special Master during the hearing process, asserting that the hearing's failure to permit him to confront and cross-examine confidential sources who provided information that supported the allegations against him violated both the Due Process Clause of the Fifth Amendment and the APA. Both claims fail as a matter of law and must be dismissed.

First, the Special Master's hearing procedures provided the full panoply of process due under the Constitution, including notice of the specific allegations against him and an opportunity to be heard and rebut those allegations, including the opportunity to provide both oral testimony and written submissions. *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 318 (D.C. Cir. 2014) ("Both the Supreme Court and this Court have recognized that the right to know the factual basis for the action and the opportunity to rebut the evidence supporting that action are essential components of due process."). Second, the formal hearing procedures under the APA that Plaintiff relies upon do not apply here because Congress declined to impose the APA's formal

14

hearing procedures and expressly authorized the Special Master to determine what hearing procedures should apply. The Complaint accordingly should be dismissed.[4]

### A. The Special Master's hearing procedures satisfy due process requirements.

"[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). Instead, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id*. The fundamental requirement of due process is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

How to satisfy due process's meaningful-opportunity requirement is informed by context, and, accordingly, due process procedures may vary "'depending upon the importance of the interests involved.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971)). Due process does not require, in all cases, "procedures which approximate a judicial trial." *Holy Land Found. For Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003); *see also Gonzalez v. Freeman*, 334 F.2d 570, 580 n.21 (D.C. Cir. 1964). The Fifth Amendment requires that "a person receive his 'due' process, not every procedural device that he may claim or desire." *Johnson v. United States*, 628 F.2d 187, 194 (D.C. Cir. 1980).

---

[4] Although Plaintiff named Kenneth R. Feinberg as an official-capacity defendant in this matter, Mr. Feinberg is no longer Special Master of the Fund, and under the operation of Federal Rule of Civil Procedure 25(d), Mr. Feinberg is not a proper defendant and must be dismissed from the case. The current Special Master, Mary Patrice Brown, is automatically substituted as the proper defendant. *Id*. We respectfully request that the Clerk of Court update the caption to reflect this change.

The Fund's hearing procedures provided more than adequate process. Plaintiff's assertions that he should have been allowed to learn the identities of confidential sources, and to confront and cross-examine those sources in this setting, are not supported by law. The Special Master provided Plaintiff adequate notice and opportunity to be heard and to refute the Special Master's conclusions. Plaintiff availed himself of those opportunities. He received all of the process that he was due, and the Court should dismiss the Complaint.

1.   **D.C. Circuit precedent does not require the right to confront and cross-examine sources in administrative proceedings.**

Plaintiff's argument that the Special Master's hearing procedures failed to provide due process via the opportunity to confront and cross-examine confidential sources is squarely foreclosed by D.C. Circuit precedent. The hearing procedures employed by the Special Master provided Plaintiff notice of the reasons for the Special Master's decision and a meaningful opportunity to respond, calibrated both to conform with the expedited timeline required by the statutory framework and the national security interests implicated by Plaintiff's particular circumstances. These procedures satisfy due process, and the additional procedures Plaintiff seeks are not warranted. *See Gray Panthers v. Schweiker*, 652 F.2d 146, 165 (D.C. Cir. 1980) (defining "core requirements" of due process as "adequate notice . . . and a genuine opportunity to explain").

The Act provides that a claimant whose claim is denied in whole or in part by the Special Master may request a hearing before the Special Master. 34 U.S.C. § 20144(b)(3). Not only did Plaintiff receive a hearing before the Special Master, during which he presented oral testimony and his counsel presented argument, AR507-610, the Special Master also afforded Plaintiff the opportunity to provide three separate written submissions in support of his claim. AR212-506, 755-77, 784-97. The Special Master also provided Plaintiff with all of the information that he relied on in reaching his determination, disclosing the full record to Plaintiff. The risk of erroneous

deprivation was low because Plaintiff was afforded multiple opportunities to submit evidence disproving the Special Master's conclusion. Indeed, before issuing his final decision, the Special Master provided Plaintiff with five questions directed to his specific concerns and gave Plaintiff the opportunity to respond. AR780-81. After considering all of the evidence, including oral testimony from Plaintiff, the Special Master found that, based on the preponderance of the evidence, Plaintiff's application contained material omissions and false statements regarding his primary purpose for traveling to Iran. AR798-800. The Special Master explained that his conclusion was based on the totality of the evidence and was supported by Plaintiff's inability to refute evidence from the Department of Justice on several key issues. AR799-800.

In his complaint, Plaintiff specifically takes issue with the evidence in the record on one of these key issues: the Department's assertion that four reliable confidential sources independently maintain that Plaintiff traveled to Iran primarily for reasons unrelated to a family visit – which Plaintiff dismisses as "anonymous hearsay allegations." *See* Compl. ¶¶ 77-79.[5] The Department's assertion is supported by a declaration, signed under penalty of perjury pursuant to 28 U.S.C. § 1746, by the FBI's lead agent on the espionage investigation of Plaintiff. AR631-32. And Plaintiff was informed of what the confidential sources alleged—namely that Plaintiff's true purpose in traveling to Iran was to sell classified U.S. national security information. Plaintiff had

---

[5] Moreover, Plaintiff ignores the evidence on other issues in the record that the Special Master relied on in support of his decision including (1) unrefuted evidence that Plaintiff obtained an Iranian passport relying upon his Iranian citizenship, which violated the terms and conditions of his security clearance; (2) unrefuted evidence that Plaintiff never disclosed to United States officials at any time his intention to travel to Iran as required as a DOD contractor; (3) unrefuted evidence from the FBI's forensic examination of his computer search/access logs revealing that over 90 percent of hundreds of highly classified documents accessed by Plaintiff were focused on the subject of Iran, rather than on his assigned responsibility to analyze terrorist threats in Afghanistan; and (4) evidence that Plaintiff provided evasive, false, and inconsistent statements to the FBI when interviewed on three separate occasions by FBI agents concerning his trip to Iran and the circumstances surrounding that trip. AR631-754, 798-800

notice of the allegations against him and was granted a full opportunity to refute the evidence relied on by the Special Master. That he failed to persuade the Special Master is immaterial to the analysis.

Plaintiff challenges the failure of the hearing to permit him to "confront" these confidential sources who supplied information upon which the Special Master relied, and to "cross-examine" those individuals. He argues that these additional procedures were necessary to provide constitutionally adequate due process. Compl. ¶ 88. Although Plaintiff uses the term "witnesses" to describe these individuals, none of them testified at the hearing before the Special Master. *See Doe v. Lieberman*, No. 20-CV-2148, 2021 WL 4476748, at *10–11 (D.D.C. Sept. 30, 2021) ("[A]dministrative proceedings are not formal trials, and the right to cross-examine witnesses in administrative hearings is not absolute, particularly where the individuals a party seeks to cross-examine did not appear before the tribunal in question.").

Because none of the individuals who Plaintiff seeks to cross-examine appeared or testified at trial, his claim must be understood to encompass, as he phrases it, both the right to "confront" *and* "cross-examine" witnesses. Compl. ¶ 88. Plaintiff asserts that due process required an opportunity to "confront" the witnesses against him, but Plaintiff "does not have a right to confront witnesses against him, as the Confrontation Clause does not apply here." *Pearson v. District of Columbia*, 644 F. Supp. 2d 23, 47 (D.D.C. 2009) (citing *Dutton v. Evans*, 400 U.S. 74, 97 n. 4 (1970) (Harlan, J., concurring)); *see Dutton*, 400 U.S. at 97 n.4 (Harlan, J., concurring) (explaining that the Confrontation Clause applies only to criminal prosecutions). In *Pearson*, for example, the Court rejected Plaintiff's argument that he must be "given the right to examine or cross-examine every person who gave any information, favorable or unfavorable" to the decision-making body. 644 F. Supp. 2d at 47 (quoting *Halleck v. Berliner*, 427 F. Supp. 1225, 1236 (D.D.C. 1977)). Here,

as in *Pearson*, the "decision not to allow plaintiff to confront witnesses cannot serve as the basis for plaintiff's due process claim." *Id.* at 47-48; *see also Robinson v. D.C. Hous. Auth.*, 660 F. Supp. 2d 6, 14-16 (D.D.C. 2009) (due process does not require the opportunity to cross examine any individual who provided information to the decisionmaker).

To the contrary, it is well established that due process does not require that agencies "provide procedures which approximate a judicial trial" and there is "no right to confront and cross-examine witnesses" in administrative civil proceedings. *Holy Land*, 333 F.3d at 164; *see also Nat'l Council of Resistance of Iran v. Dep't of State* ("*NCOR*"), 251 F.3d 192, 209 (D.C. Cir. 2001) (same); *see e.g.*, *Am. Pub. Gas Ass'n v. Fed. Power Comm'n*, 498 F.2d 718, 723 (D.C. Cir. 1974) (holding due process was satisfied despite the lack of cross-examination because "[t]he issues were clearly stated from the outset[,] . . . the petitioners were given an adequate opportunity to participate in developing evidence bearing upon those issues" and there was "no reason to believe that the exchanges or dialogue between and among the parties were so inadequate as a mechanism for finding the facts that a trial-type proceeding was necessary"); *see also Lieberman*, 2021 WL 4476748, at *10-11 (no right to cross-examine individuals who did not appear before tribunal). Plaintiff's due process claim is squarely foreclosed by this longstanding D.C. Circuit precedent.

Additionally, Plaintiff's implied assertion that the Special Master improperly relied on hearsay when he considered information from the four confidential sources is without merit. As long as it is relevant and material, the utilization of hearsay evidence in administrative proceedings is well grounded. *Hoska v. U.S. Dep't of the Army*, 677 F.2d 131, 138 (D.C. Cir. 1982). It has long been settled that the factfinder in an administrative adjudication may consider relevant and material hearsay. *Montana Power Co. v. Fed. Power Comm'n,* 185 F.2d 491, 498 (D.C. Cir. 1950). For example, in *Brown v. Gamage*, 377 F.2d 154 (D.C. Cir. 1967), the D.C. Circuit affirmed the

involuntary discharge of an Air Force officer based upon out-of-court statements that the Air Force had taken from five witnesses. *See id.* at 158. Congress never instructed the Special Master to follow the rules of evidence as applied in the courts. *See Johnson*, 628 F.2d at 190 (declining to rule hearsay evidence inadmissible in administrative proceeding to which the Federal Rules of Evidence did not apply); *see also Grant v. Mnuchin*, Civ. A. No. 15-1008 (RMC), 2019 WL 6034992, at *5 (D.D.C. Nov. 14, 2019) (same). The Special Master was entitled to consider and rely upon information that would meet the definition of hearsay under the Federal Rules of Evidence.

Finally, to the extent Plaintiff challenges the adequacy of the information that he was provided, Plaintiff was provided the entirety of the record upon which the Special Master relied. None of the information that the Special Master considered was withheld from Plaintiff. And even if the Special Master had been privy to the identity of the confidential sources here, the D.C. Circuit has endorsed proceedings where the decisionmaker reviews *ex parte* evidence as providing constitutionally adequate due process. *See, e.g.*, *Holy Land*, 333 F.3d at 164 (holding procedures complied with due process despite designee only being permitted to view a portion of the information upon which the decisionmaker relied); *NCOR*, 251 F.3d at 208-09 (same). The D.C. Circuit has repeatedly rejected the argument that a proceeding violates due process simply because the agency does not disclose sensitive national security information that the agency relied upon. *See Fares v. Smith*, 901 F.3d 315, 324 (D.C. Cir. 2018); *see also People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238, 1241-42 (D.C. Cir. 2003).

Neither Plaintiff nor the Special Master, however, were provided with certain highly sensitive information, such as the identities of confidential sources, which the United States has a strong national security interest in protecting. *See Ralls Corp.*, 758 F.3d at 319 ("[D]ue process

requires, at the least, that an affected party be informed of the official action, be given access to the *unclassified* evidence on which the official actor relied and be afforded an opportunity to rebut that evidence.") (emphasis added). And the D.C. Circuit found no due process violation where the government provided an organization designated as a narcotics trafficker with "sufficiently specific 'unclassified summaries . . . ensuring that neither the government's sources nor national security were compromised, . . . [that] provide [plaintiffs] with the 'who,' 'what,' 'when,' and 'where' of the allegations.'" *Fares*, 901 F.3d at 324 (quoting *Kiareldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001). Here, both Plaintiff and the Special Master were provided with specific unclassified summaries, thereby presenting the Special Master and Plaintiff with the relevant details of the allegations while preserving the identities of the confidential sources. Plaintiff here was provided all of the evidence upon which the Special Master relied and has no right to access the highly sensitive information that the Special Master did not see.

Plaintiff was provided the specific reasons why the Special Master determined he was ineligible for compensation from the Fund, and the factual support that the Special Master relied on in making that determination. Plaintiff was afforded multiple opportunities to refute, in both oral and written form, the evidence that the Special Master relied on. That he was unable to do so does not undermine the fact that he received adequate due process and there is no basis in law to support Plaintiff's claim that due process required Plaintiff to be permitted to confront and cross-examine confidential sources. *Holy Land*, 333 F.3d at 164.

## 2.   The *Mathews* factors confirm that the Special Master's procedures provided sufficient due process in this context.

Although the Court need go no further, given settled precedent foreclosing Plaintiff's claim, a straightforward considering of the factors courts look to in assessing due process claims confirms that this action must be dismissed. Courts generally analyze three factors, drawn from

21

the Supreme Court's decision in *Mathews*, to determine whether a proceeding complies with due process: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest," including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Gilbert*, 520 U.S. at 931-32 (quoting *Mathews*, 424 U.S. at 335).

1. The interest at stake in the hearing before the Special Master was Plaintiff's initially granted eligibility to monetary payment, which depends in turn on the availability of money in the Fund and Plaintiff's district court judgment award. This is not a case where an individual's liberty is at stake, which typically would require heightened due process procedures. *See, e.g., Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (freedom from physical detention a "core" liberty interest accorded significant weight) (citation omitted). And unlike social security payments, disability payments, or unemployment payments, payments from the Fund are not based on an individual's need or inability to obtain a means of livelihood elsewhere. *Cf. Loudermill*, 470 U.S. at 543 (recognizing the "severity of depriving a person of the means of livelihood). Courts have recognized a significant private interest in disability benefits, for example, because eligibility criteria establish that all beneficiaries were at one point deemed "unable to engage in substantially gainful activity," making it more likely that a beneficiary's livelihood depends on the benefits. *Mathews*, 424 U.S. at 341 (quoting 42 U.S.C. § 423).

Here, by contrast, payments from the Fund are not based on an individual's financial need or inability to earn a livelihood through other means. *See Isaacs v. Bowen*, 865 F.2d 468, 475–76 (2d Cir. 1989). In *Isaacs*, like this case, the alleged property interests were "not based on financial

need" and therefore "the private interest at stake [was] not overwhelming." *Id*. at 476 (quoting *Schweiker v. McClure*, 456 U.S. 188, 194 (1982)). Payments from the Fund do not engender strong reliance interests, unlike social security or disability payments, because payments from the Fund are contingent on the availability of sufficient funds—something that is not guaranteed. *See* 34 U.S.C. § 20144(b)(1)(A)(ii) (conditioning distributions on availability of funds). Therefore, although Plaintiff would arguably be entitled to some amount of process before the Special Master, the interests here are not so significant that heightened procedures beyond ordinary notice and opportunity to be heard would apply.

2. The risk of erroneous deprivation is minimal where, as here, Plaintiff was afforded notice of the allegations against him and multiple opportunities to rebut those allegations, both through oral testimony and written submissions. Plaintiff understates the thoroughness of the hearing procedures that he availed himself of and overstates both the risk of erroneous deprivation and the probable value of the opportunity to "confront" and "cross-examine" the four unidentified sources referenced in one of the FBI's written submissions to the Special Master. The hearing procedures employed by the Special Master not only suffice in comparison to, but actually exceed procedures that courts have routinely found to satisfy due process in analogous circumstances. *See Zevallos v. Obama*, 793 F.3d 106, 116 (D.C. Cir. 2015) ("He was given notice and a meaningful opportunity to be heard, which is what the Due Process Clause requires."); *see also Holy Land*, 333 F.3d at 156 (holding agency provided the plaintiff "with the requisite notice and opportunity for response necessary to satisfy due process requirements" when it gave the plaintiff "thirty-one days to respond" and the agency "considered its response"). Here, rather than deciding Plaintiff's claim on a written record alone, Plaintiff was permitted to provide oral testimony to the Special Master. *See Loudermill*, 470 U.S. at 546 (recognizing that the "opportunity to present reasons, either in

person or in writing, why the proposed action should not be taken is a fundamental due process requirement"); *see also Arnett v. Kennedy*, 416 U.S. 134, 154 (1974) (collecting cases discussing what level of process is required). There was no serious risk of erroneous deprivation here, where Plaintiff was afforded multiple opportunities to rebut the evidence against him.

3. The government has a strong interest in protecting its national security interests by not disclosing the identities of its confidential sources. *See Fares*, 901 F.3d at 324 (recognizing that "the government simply could not disclose more, under *Mathews's* third prong—at least not without compromising ongoing enforcement efforts, endangering people's lives, and undermining national security"); *see also Ralls Corp*., 758 F.3d at 320 (recognizing "substantial interest in national security"); *NCOR*, 251 F.3d at 208-09 (sensitive information is "within the privilege and prerogative of the executive, and we do not intend to compel a breach in the security which that branch is charged to protect").

And the Fund's statutorily prescribed interest in timely resolution of eligibility determinations further tips the scale in support of the Fund's current procedures. The Act's intent to provide a speedy, efficient mechanism for U.S. victims of state sponsors of terrorism to secure compensation expeditiously is apparent in the legislation itself. Congress gave claimants whose claims are denied in whole or in part only 30 days to request a hearing, and then required the Special Master to issue its final decision not later than 90 days after any such hearing. 34 U.S.C. § 20144(b)(4)(A)-(B). These and other provisions underscore the speed with which Congress intended for the Fund to be managed and money allocated to eligible victims. *See, e.g.*, *id*. § 20144(b)(1)(A)(i)-(ii) (requiring appointment of Special Master within 60 days, reappointment term not to exceed 1 year); *id*. § 20144(b)(2)(A) (requiring publication of Fund Procedures within 60 days). And because payments are made on a pro rata basis, a delay in determining the eligibility

of even one claimant's payment would necessarily mean delaying payments to all claimants in that round. Providing additional, time-consuming, hearing procedures would frustrate Congress's goal of a speedy and effective distribution scheme.

### B. The procedural requirements for formal APA adjudications do not apply to hearings before the Special Master.

Plaintiff alternatively argues that the hearing before the Special Master was required to comport with the APA's procedural requirements for formal adjudications under 5 U.S.C. § 556(d). *See* Compl. ¶ 92 (arguing that under the APA "[a] party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts.") (quoting 5 U.S.C. § 556(d)). But hearings before the Special Master do not qualify as formal adjudication procedures for this purpose.

The Act requires that the Special Master offer a claimant whose claim is denied in whole or in part an opportunity for a "hearing before the special master pursuant to procedures established by the Special Master." 34 U.S.C. § 20144(b)(4). The Supreme Court has squarely rejected the proposition that congressional use of the term "hearing" in a statute triggers the APA's formal adjudication requirements in 5 U.S.C. § 556. *See United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 237 (1973) (APA formal procedures are not required where the substantive statute provides for a "hearing" without specifying that the hearing be held "on the record"); *see also Nat'l Classification Comm. v. United States*, 765 F.2d 1146, 1150 (D.C. Cir. 1985); *R.R. Comm'n of Texas v. United States*, 765 F.2d 221, 227 (D.C. Cir. 1985) ("A fundamental and well-recognized distinction exists between a requirement that an agency provide a 'hearing' and a requirement that an agency provide a 'hearing on the record.' Formal proceedings do not attach to a requirement of a 'hearing;' such proceedings would obtain only on the requirement of a 'hearing on the record.'")

25

(collecting cases). The D.C. Circuit does not "presume that a statutory reference to a 'hearing,' without more specific guidance from Congress, evinces an intention to require formal adjudicatory procedures." *Chem. Waste Mgmt., Inc. v. E.P.A.*, 873 F.2d 1477, 1482 (D.C. Cir. 1989)."[S]uch a presumption would arrogate to the court what is now clearly the prerogative of the agency, viz., to bring its own expertise to bear upon the resolution of ambiguities in the statute that Congress has charged it to administer." *Id.*[6]

Congress did not express any intent for the hearing procedures to be a formal hearing on the record that would be governed by the APA's formal adjudications procedures in 5 U.S.C. § 556(d). To the contrary, Congress evinced a clear intention that the hearing procedures be "established by the Special Master," 34 U.S.C. § 20144(b)(4)(A), and directed the Special Master to "bring its own expertise to bear" on how best to implement the statutory hearing requirement. *Chem. Waste Mgmt., Inc.*, 873 F.2d at 1482. Accordingly, Plaintiff's claim that the hearing before the Special Master violated the APA because it failed to adhere to the formal procedural requirements of 5 U.S.C. § 556(d) fails as a matter of law.

## CONCLUSION

For the reasons discussed herein the Court should dismiss the Complaint.

Dated: March 8, 2024                    Respectfully Submitted,

BRIAN BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Anna L. Deffebach*
Anna L. Deffebach (DC Bar # 241346)

---

[6] Even if the APA's formal adjudicatory procedures did apply here, Plaintiff's claim would still fail. "Even in a formal adjudicatory hearing under the APA, . . . cross examination is not always a right." *Am. Pub. Gas Ass'n*, 498 F.2d at 723.

Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 993-5182
Facsimile:  (202) 616-8460
Email: anna.l.deffebach@usdoj.gov

*Counsel for Defendants*